IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| VALERIE F. JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>BANK OZK,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 5:21-CV-44 (MTT)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER

On February 3, 2021, Defendant Bank OZK removed this putative class action from the Bibb County State Court to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Doc. 1. The Court allegedly has original subject matter jurisdiction of this case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *Id*. ¶ 7. Plaintiff Valerie F. Johnson has moved to remand the case back to the State Court of Bibb County. Doc. 11. Because OZK has not established that CAFA's minimum amount in controversy requirement is met and thus has not established that the Court has subject matter jurisdiction, Johnson's motion to remand (Doc. 11) is **GRANTED**.

### I. BACKGROUND

Johnson alleges three types of contract breaches against OZK in her putative class action lawsuit. First, Johnson alleges that OZK improperly charged overdraft fees[1] when, in fact, there were sufficient funds in an account holder's account. Doc. 1-1

---

[1] The Court refers to both overdraft fees and insufficient funds fees simply as "overdraft fees." Any difference between the two is immaterial for the purpose of this Order. *See* Docs. 1-1 ¶ 1; 14 at 2.

¶¶ 8-13.  Second, Johnson alleges that OZK improperly charged multiple overdraft fees on single attempted transactions.  *Id*. ¶¶ 14-22.  For these two claims, Johnson does not allege that *all* overdraft fees were improper; rather, she challenges only the fees assessed when a transaction did not actually overdraft an account and the fees assessed on successive attempts to process a single transaction for which there were insufficient funds.  Third, Johnson alleges that OZK improperly charged balance inquiry fees before cash withdrawals from out-of-network ATMs.  *Id*. ¶¶ 23-27.

Johnson seeks to certify a class consisting of:

> All Georgia citizens residing in the state of Georgia who, on or before July 31, 2018, were charged [overdraft fees] by [OZK] on items that did not overdraw their accounts, or who were charged multiple [overdraft fees] by [OZK] on the same item from an account held with [OZK], or who were charged ATM Fees by [OZK] for balance inquires that preceded a cash withdraw.

*Id*. ¶ 29.

Johnson argues that the Court does not have subject matter jurisdiction over this case because OZK has not established that the amount in controversy exceeds $5 million, CAFA's jurisdictional threshold.  Doc. 11 ¶ 2.  Therefore, Johnson argues, the Court should remand the case back to the State Court of Bibb County.  *Id*. ¶ 1.

## II. DISCUSSION

### A. Legal Standard

CAFA states that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … Any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).  The statute also requires that there be at least 100 members of the putative class.  28

U.S.C § 1332(d)(5)(B).  Thus, CAFA grants federal courts jurisdiction over class actions if: "(1) any member of the plaintiff class is a citizen of a state different from the state of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (citations omitted).

The party seeking to establish federal subject matter jurisdiction bears the burden of showing that each of CAFA elements is satisfied.  *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207-08 (11th Cir. 2007).  This includes "establishing the jurisdictional amount by a preponderance of the evidence." *Id.* at 1208.  Although at an early stage of litigation there is often nothing but the bare pleadings, the Eleventh Circuit has stated that it may be appropriate to weigh competing evidence filed with a putative class action to determine if the jurisdictional amount in controversy has been met.  *Id.* at 1209 n.56. Jurisdiction will be established if the "jurisdictional amount is either stated clearly on the face of the documents before the court[] or readily deducible from them." *Id.* at 1211; *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (stating a party may make factual allegations "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations").  It is improper for a court to speculate when determining whether the documents submitted by a party establish the jurisdictional amount.  *Lowery,* 483 F.3d at 1220.  However, a court need not "suspend reality or shelve common sense in determining whether the face of the complaint … establishes the jurisdictional amount."  *Roe v. Michelin N. Am.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (citation omitted).

### B. Amount in Controversy

Two of CAFA's elements are clearly satisfied and not disputed. Docs. 11; 14 at 1. There is at least minimal diversity of citizenship because Johnson is a resident of Georgia and OZK is a corporation incorporated in Arkansas with its principal place of business also in Arkansas.[2] Doc. 1-1 ¶¶ 4-5. Also, the putative class is composed of at least 100 members; Johnson alleges that "thousands of [OZK's] customers throughout Georgia have been subjected to these practices that violated [OZK's] standard form contracts with its customers." *Id*. ¶ 2. Therefore, the only issue relevant to this motion is whether CAFA's amount in controversy requirement is satisfied.

But the complaint does not clearly establish that the jurisdictional amount is met. Thus, the Court must determine whether the minimum amount in controversy is "readily deducible" from the documents before the Court. *Lowery*, 483 F.3d at 1211. To establish the jurisdictional amount, OZK has submitted two affidavits from Cindy Wolfe, the Chief Banking Officer for OZK. First, Wolfe stated that during the applicable time period, OZK "assessed more than $5,000,000.00 in [overdraft fees] and [out-of-network ATM balance inquiry fees] to its customers with accounts maintained in Georgia." Doc. 1-2 ¶ 10. The second affidavit, submitted after Johnson moved to remand, stated that during the applicable time period, "OZK assessed over $20,000,000.00 in [overdraft fees] to its customers with accounts maintained in Georgia." Doc. 14-1 ¶ 7.

Johnson argues that Wolfe's affidavits are insufficient to establish the jurisdictional amount because they are not specific to the putative class. Docs. 11 ¶ 1;

---

[2] In fact, there appears to be complete diversity. However, jurisdiction under 28 U.S.C. § 1332(a) is lacking because the amount in controversy for any one plaintiff would not amount to more than $75,000. Therefore, OZK relies on CAFA, which allows the putative plaintiffs' claims to be aggregated. *Pretka*, 608 F.3d at 751.

19 ¶ 3.  First, Wolfe's affidavits do not address the amount of fees OZK charged to customers for balance inquiries *preceding a cash withdrawal* from out-of-network ATMs. Moreover, Wolfe's affidavits make no effort to establish, or even estimate, the percentage or amount of overdraft fees charged *for successive attempts to process a single transaction for which there were insufficient funds* or the percentage or amount of overdraft fees charged *when the transaction did not actually overdraw the account*.[3]  In short, Wolfe's affidavits—the only evidence submitted by OZK—simply establish the *total amount* of overdraft fees assessed during the relevant time period.  The affidavits shed no light on the overdraft fees charged for the transactions at issue.

The evidence submitted by Johnson, her recent bank statements, further undercuts OZK's argument that the amount in controversy includes "a vast majority" of its total assessed overdraft fees.  Doc. 14 at 7.  It appears that Johnson was charged more than forty overdraft fees during a twelve-month period.  Doc. 19-1.  However, only four of those overdraft charges appear to be alleged contract breaches (one possible overdraft fee assessed when sufficient funds may have been in Johnson's account and three successive charges on single attempted transactions).  *Id*. at 10, 24.  Accordingly, this limited evidence suggests that most overdraft fees are not in dispute.  Of course, Johnson's experience is far from conclusive, but her experience demonstrates the risk of *assuming* anything from Wolfe's affidavits.

---

[3] OZK argues that the "multiple-presentment theory means that two of three possible [overdraft] fees for every returned item are independently at issue."  Doc. 14 at 7.  Evidence that the bank regularly charged multiple overdraft fees on a single attempted transaction would have been helpful.  However, knowing that multiple fees *possibly* were charged is not.  OZK further alleges that Johnson "calls into question the very method by which Bank OZK calculates whether a customer has enough funds."  *Id*.  Perhaps, but that still does not mean that Johnson alleges every overdraft fee is a contract breach.  For example, a single overdraft fee when there were insufficient funds by any method of calculation is not in controversy.

This case is similar to *Dudley v. Eli Lilly and Company*, in which the Eleventh Circuit held that the putative class action defendants had failed to show the amount in controversy exceeded $5 million.  *Dudley,* 778 F.3d at 911.  The defendants allegedly had failed to make certain incentive/bonus payments to former employees if their employment terminated before a given sales period ended.  To establish CAFA's subject matter jurisdiction, the defendants submitted evidence that 922 former employees were potential class members.  Then, using the midpoint[4] of a previous year's range of incentive payments and using the plaintiff's allegation that a promised incentive trip was worth $5,000 per employee, the defendants argued that, in the aggregate, 122 former employees could have lost $610,000, 339 former employees could have lost $3,084,900, and 510 former employees could have lost $6,215,625. *Id*. at 915.

The Eleventh Circuit noted that the complaint did not allege, as the defendants had assumed in their amount in controversy calculation, that all the class members were owed all possible categories of incentives.  Further, the evidence establishing the potential amount in controversy "failed to establish even generally the dollar amounts that each of the [former employees] may have been denied in payment incentives as a result of their termination dates." *Id*. at 916.  Thus, the Eleventh Circuit held that because the defendant's evidence only established how much each class member "theoretically could have received … the district court was unable to make any 'reasonable inferences and deductions drawn from that evidence to determine whether

---

[4] The Eleventh Circuit noted that by using the *midpoint* numbers, the defendants had not established whether the potentially withheld incentive payments were realistic compared to what the *average* incentive payments were or realistic compared to what the individual class members had received before.

the defendant has carried its burden' of sustaining the jurisdictional threshold." *Id*. at 917 (quoting *S. Fla. Wellness, Inc. v. Allstate Ins. Co*., 745 F.3d 1312, 1315 (11th Cir. 2014)).

The defendants in *Dudley*, unlike OZK, at least made some effort to quantify, within the relevant universe, what amount was in dispute. OZK simply quantifies the universe. Accordingly, OZK has not established by a preponderance of the evidence that the amount in controversy in this case is at least $5 million.

### III. CONCLUSION

For the foregoing reasons, OZK has not established by a preponderance of the evidence that the Court has subject matter jurisdiction pursuant to CAFA. Accordingly, Johnson's motion to remand (Doc. 11) is **GRANTED**, and OZK's motion to dismiss (Doc. 12) is **DENIED** as moot.

**SO ORDERED**, this 26th day of April, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
